UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

OSCAR C.M.,[1]

    Petitioner,

v.

TODD LYONS, et al.,

    Respondents.

No. 1:25-cv-01915-TLN-SCR

**ORDER**

This matter is before the Court on Petitioner Oscar C.M.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) On December 18, 2025, the Court ordered Respondents Jason Knight, Kristi Noem, U.S. Department of Homeland Security, Pamela Bondi, Executive Office for Immigration Review, and Christopher Chestnut (collectively "Respondents") to show cause as to why Petitioner should not be immediately released. (ECF No. 5.) On December 19, 2025, Respondents filed a response.[2] (ECF No. 10.) On December 22, 2025, Petitioner filed a reply.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only her first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

[2] Petitioner's reply brief contains facts that contradict his petition (*i.e.,* age, children, years in the country). (*Compare* ECF No. 1 *with* ECF No. 11.) The Court presumes the discrepancies

1

(ECF No. 11.)  For the reasons set forth below, Petitioner's petition is GRANTED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of El Salvador.  (ECF No. 1 at 2.)  Petitioner entered the United States on February 19, 2022 as an unaccompanied minor.  (*Id*.)  On March 29, 2024, Petitioner's application for Special Immigrant Juvenile Status was approved, and Petitioner was granted Deferred Action.  (ECF No. 11 at 17.)  Following an arrest for a misdemeanor, Petitioner was taken into immigration custody around November 17, 2025.  (ECF No. 1 at 2–3.)

On December 2, 2025, an immigration judge denied Petitioner a bond hearing, finding that she lacked jurisdiction to consider the matter under *Matter of Yajure Hurtado*.[3]  (ECF No. 11 at 19.)  However, the judge also found that Petitioner is not a danger to the community or a flight risk and, in an alternative finding, would set a bond in the amount of $5,000 with alternatives to detention, if she did have jurisdiction.  (ECF No. 6 at 4.)  Petitioner has now been detained without a bond hearing for over a month.  (ECF No. 1 at 6.)

On December 17, 2025, Petitioner filed a petition for writ of habeas corpus seeking release within one day.  (ECF No. 1.)  Considering the issues are familiar to this Court and Respondents, and to avoid further irreparable harm, the Court issued an order to show cause as to why Petitioner should not be immediately released.  (ECF No. 5.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

are a copying error by counsel.  The Court will not guess which facts were inadvertently copied by counsel, therefore, the Court disregards the facts as provided in the reply brief.  (ECF No. 11.)

[3]    *Matter of Yajure Hurtado*, 291 I. & N. Dec. 216, 225 (BIA 2025) (stripping Immigration Judges of authority to consider bond requests for any person who entered the United States without admission pursuant to a recent DHS policy mandating detention for those persons).

1  Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has
2  served as a means of reviewing the legality of Executive detention, and it is in that context that its
3  protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a
4  district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*
5  *Davis*, 533 U.S. 678, 687 (2001).

6  **III.   ANALYSIS**

7  Petitioner claims he is being unlawfully subjected to mandatory detention without a
8  hearing in violation of the INA and his due process rights.[4] In response, Respondents argue
9  Petitioner's detention is lawful as he is being detained pursuant to the mandatory detention
10 statute, 8 U.S.C. § 1225(b)(2) ("§1225(b)(2)").

11              *i.      Statutory Claim*

12 The Court begins with the central dispute in this case: whether § 1225(b)(2) or § 1226(a)
13 governs Petitioner's immigration detention. The issue turns on whether Petitioner is an applicant
14 "seeking admission." Section 1225(b)(2) mandates detention during removal proceedings for
15 applicants "seeking admission" and does not provide for a bond hearing. Section 1226(a)
16 "provides the general process for arresting and detaining [noncitizens] who are present in the
17 United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th
18 Cir. 2022). Under § 1226(a), the Government has broad discretion whether to release or detain
19 the individual. *Id.* Section 1226(a) provides several layers of review for an initial custody
20 determination and it confers "an initial bond hearing before a neutral decisionmaker, the
21 opportunity to be represented by counsel and to present evidence, the right to appeal, and the right
22 to seek a new hearing when circumstances materially change." *Id.* at 1202. Until DHS changed

---

[4] Petitioner also claims he is entitled to relief because he is a member of the class in *Maldonado Bautista v. Santacruz.* (ECF No. 1 at 3–4.) *See* No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (extending summary judgment to class). The parties dispute whether Petitioner is a class member. (*See* ECF No. 10 at 2–3.) Respondents claim that he was initially apprehended at the border (*id.*) while Petitioner claims he was not. (ECF No. 1 at 3.) Neither party supplies facts sufficient for this Court to make a determination. However, the Court need not decide on Petitioner's class member status because Respondents statutory and constitutional violations warrant relief.

its policy in July, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by an immigration authorities and subject to removal. *See id.* at 1196.

Here, Petitioner contends that he is not "seeking admission" and he should be subject to § 1226(a) consistent with DHS's former practice, thus, he is entitled to a § 1226 bond hearing. (*See* ECF No. 1.) He further argues that subjecting him to mandatory detention under § 1225(b)(2) without an individualized custody determination violates the INA. (*Id.* at 7.) Respondents argue that § 1225(b)(2) is the correct authority for Petitioner's detention which does not entitle him to a hearing. (*See* ECF No. 10.) Respondents do not argue that they have an independent basis (apart from the change in policy) to subject Petitioner to mandatory detention under § 1225; it is DHS's new statutory interpretation which subjects him to § 1225(b)(2).

Courts nationwide, including this one, have overwhelmingly rejected Respondents' arguments and found DHS's new policy unlawful. *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across 160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v.*

4

1   *Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23,
2   2025) (collecting cases). This Court agrees with the well-reasoned and compelling decisions and
3   finds no reason to reconsider its prior rulings.
4       For these reasons, the Court finds Petitioner is not an applicant "seeking admission"
5   subject to mandatory detention under § 1225(b)(2). Petitioner is subject to § 1226(a) and
6   therefore he is entitled to the statutorily permitted process including a bond hearing at minimum.
7   However, Petitioner was denied a bond hearing on December 2, 2025, and was afforded no other
8   opportunities for a hearing. Thus, the Court finds Respondents have violated the INA and
9   improperly subjected Petitioner to mandatory detention without a hearing.

10                  *ii.       Due Process Claim*
11      Petitioner also argues that his continued indeterminate civil detention without a hearing
12  infringes upon his liberty in violation of due process. (ECF No. 11 at 9.) Respondents argue that
13  Petitioner is only entitled to the process that Congress grants by statute and, under § 1225(b)(2)
14  which mandates detention. (ECF No. 10 at 3.)
15      The Fifth Amendment Due Process Clause prohibits government deprivation of an
16  individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d
17  976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of
18  the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)
19  ("[T]he Due Process Clause applies to all 'persons' within the United States, including
20  noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These
21  due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at
22  693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).
23      Courts examine procedural due process claims in two steps: the first asks whether there
24  exists a protected liberty interest under the Due Process Clause, and the second examines the
25  procedures necessary to ensure any deprivation of that protected liberty interest accords with the
26  Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);
27  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,
28  the question remains what process is due.").

*a) Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

The Court finds Petitioner has a substantial liberty interest based on his release from immigration custody. *Salcedo Aceros*, 2025 WL 2637503, at *6 ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody."). Additionally, in 2024, Respondents granted Petitioner Deferred Action, which increased Petitioner's reliance on his liberty interest. (ECF No. 6 at 2.) Respondents informed Petitioner that for at least four years, until 2028, DHS and ICE would exercise their discretion not to pursue his removal and would authorize him to work. (*Id.*)

*b) Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz*, 53 F.4th at 1206.

As to the first *Mathews* factor – Petitioner's private interest – as discussed above, Petitioner has been out of custody. (ECF No. 1 at 2.) During those years, Petitioner established a life and relationships. (*Id.*) The length of time Petitioner has been in the United States, as well as his established relationships, create a powerful interest for Petitioner in his continued liberty. *See*

6

1   *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

2   As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the
3   risk here to be considerable. The risk of an erroneous deprivation of Petitioner's liberty interest is
4   high where he has received virtually no procedural safeguards such as a bond or a custody
5   redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at
6   *5 (E.D. Cal. May 16, 2025). This is particularly so where, as here, an immigration judge has
7   already determined that Petitioner is neither dangerous nor a flight risk. (ECF No. 6 at4); *See*
8   *R.D.T.M.*, 2025 WL 2686866 at *6 ("Civil immigration detention, which is 'nonpunitive in
9   purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the
10  community.").

11  As to the third *Mathews* factor, the government's interest in detaining Petitioner without a
12  hearing before a neutral decisionmaker is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6.
13  Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the
14  government's interest is further diminished here because an immigration judge has already
15  determined that Petitioner is neither dangerous nor a flight risk. (ECF No. 11 at 19.) "The
16  government has no legitimate interest in detaining individuals who have been determined not to
17  be a danger to the community and whose appearance at future immigration proceedings can be
18  reasonably ensured by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994.
19  Additionally, Petitioner has Special Immigrant Juvenile Status and no final order of removal.

20  Having found that Respondent violated Petitioner's statutory and constitutional rights, the
21  Court GRANTS Petitioner's petition. (ECF No. 1).

22  **IV.   CONCLUSION**

23  IT IS HEREBY ORDERED:

24  1.   Petitioner's petition for writ of habeas corpus (ECF No. 1) is GRANTED;

25  2.   Respondents must IMMEDIATELY RELEASE Petitioner Oscar C.M. from
26  custody under the conditions set forth in the immigration judge's December 2, 2025, Order.
27  Based on the court's finding that Petitioner is not a danger to the community or a flight risk, he
28  shall be released on a bond in the amount of $5,000 with alternatives to detention.

3. The clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: December 22, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE